IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ROBIN SLOAN                                                                                          PLAINTIFF

vs.                                                                                              No. 3:03CV110-D-A

B.L. DEVELOPMENT, d/b/a
GRAND CASINO - TUNICA                                                                          DEFENDANT

OPINION GRANTING POST-TRIAL MOTIONS IN PART

Presently before the court is the Defendant's renewed motion for judgment as a matter of law or, in the alternative, for new trial or remittitur. Also pending is the Plaintiff's motion for reinstatement or, in the alternative, for front pay. Upon due consideration, the court finds that the Defendant's motion should be granted in part and denied in part, and the Plaintiff's motion should be denied.

*A. Factual and Procedural Background*

The Plaintiff, a white female over the age of forty, began working as the Convention Center Manager at the Defendant's Tunica, Mississippi, casino in July of 1997. In early 2002, some four and a half years after being hired, the Plaintiff applied for the Defendant's Director of Sales position, a position that she had previously held on an interim basis and that would involve a promotion. During the subsequent job interview between the Plaintiff and Jon Lucas, the Defendant's Regional President, Lucas made a remark that the Plaintiff deemed ageist.[1] The Plaintiff reported the remark to both her supervisor and to the Defendant's local Human Resources Department. The Human Resources Department then reported the remark to the Defendant's overall corporate Human Resources Director in Las Vegas, who instructed the local Human Resources Regional Vice

---

[1] Lucas said that "it would be, like, older managers who expected to come to the casino to retire, if you know what I mean."

President to tell Mr. Lucas that the comment was inappropriate and that he should apologize to the Plaintiff and explain the remark.

Following her interview and the reporting of Mr. Lucas' remark, the Plaintiff was not promoted to the Director of Sales position. Rather, one month later, the Plaintiff was placed under a different supervisor, Eileen Duffin, despite having been under the same supervisor, Richard Simms, for three years. Two months later, after nearly five years of employment and less than four months after the fateful interview with Jon Lucas, the Plaintiff was terminated from her employment for allegedly using vulgar language in the workplace. Thereafter, on June 9, 2003, the Plaintiff filed her Complaint in this cause, asserting various claims related to her termination, including claims for age discrimination and retaliation. After the court granted the Defendant's motion for summary judgment as to some of the Plaintiff's claims, the Plaintiff's remaining claims of age discrimination and retaliation were tried to a jury. The four day jury trial commenced on February 7, 2005. The jury returned a verdict in favor of the Plaintiff in the amount of $179,916.67 in backpay on the Plaintiff's claim of unlawful retaliation; the jury also found that the Defendant's violation was willful, which doubles the backpay award, and awarded the Plaintiff $300,000 in emotional distress damages. The jury found for the Defendant on the Plaintiff's claims of age discrimination.

In its present motion, the Defendant argues that the jury's verdict should be set aside or that a new trial be granted or that the damages be remitted. The Plaintiff moves for reinstatement or an award of front pay.

### B. Standards for the Parties' Pending Motions

Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

2

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. . . . In ruling on a renewed motion, the court may . . . allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50.

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. McCrary v. El Paso Energy Holdings, Inc., 209 F. Supp. 2d 649, 651 (N.D. Miss. 2002) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S.Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

As for the Defendant's motion for a new trial, Rule 59 of the Federal Rules of Civil Procedure permits a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. The rule does not specify what grounds are necessary to support such a decision, but states only that the action may be taken "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a); Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was

committed in the course of the trial. The judgment will stand when the evidence presented at trial could reasonably support the jury's verdict. See, e.g., Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420-21 (5th Cir. 1985); Westbrook v. General Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985). A motion for a new trial based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence. Carter v. Fenner, 136 F.3d 1000, 1010 (5th Cir. 1998).

As for the Defendant's motion for remittitur, there is a strong presumption in favor of affirming a jury award of damages, and a damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. Westbrook, 754 F.2d at 1241. A verdict is excessive only if it is "contrary to right reason" or "entirely disproportionate to the injury sustained." Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983).

The Plaintiff has filed a motion seeking reinstatement or front pay. The Fifth Circuit has held that "[r]einstatement is the preferred remedy for a discriminatory discharge . . . ." Deloach v. Delchamps, Inc., 897 F.2d 815, 822 (5th Cir. 1990). However, reinstatement to a former position is inappropriate if that position no longer exists, or when a comparable position is not available. Woodhouse v. Magnolia Hosp., 92 F.3d 248, 257 (5th Cir. 1996); Ray v. Iuka Special Mun. Separate Sch. Dist., 51 F.3d 1246, 1255 (5th Cir. 1995). Also, reinstatement is inappropriate where "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." Goldstein v. Manhattan Indus., 758 F.2d 1435, 1448-49 (5th Cir. 1985).

## C. Discussion

### 1. Motion for Judgment as a Matter of Law

The Defendant argues that it is entitled to judgment as a matter of law because the Plaintiff failed to present a prima facie case of ADEA retaliation due to her failure to establish that she engaged in protected activity, her failure to show pretext, her failure to show a causal link between her protected activity and her termination, and her failure to rebut the Defendant's proffered reason for her firing.

In order to maintain a claim for ADEA retaliation a plaintiff must demonstrate (1) that she was qualified for the job in question; (2) that she engaged in a protected activity; (3) that there was an adverse employment action; and (4) that a causal link existed between the protected activity and the adverse employment action. Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 260 (5th Cir. 2001). The Defendant avers that it is entitled to judgment as a matter of law on the Plaintiff's claim because the Plaintiff failed to establish the second and fourth elements of this test.

Upon review, the court finds that the Defendant's contentions are misplaced, and shall thus deny the Defendant's motion for judgment as a matter of law. First, as for the Defendant's contention that the Plaintiff did not engage in protected activity, the testimony produced at trial demonstrated that the Plaintiff immediately reported Lucas' remark to her supervisor and to the Defendant's local Human Resources office. The Human Resources office deemed the comment serious enough to be reported to higher headquarters, which termed the comment "inappropriate" and instructed the local Human Resources office to tell Lucas to apologize for the remark. Thus, the Defendant's present assertion that the Plaintiff could not possess an "objectively reasonable belief" that the comment was ageist is without merit as the Defendant itself deemed the comment to be

5

inappropriate.

Second, the Defendant states that the Plaintiff has failed to show that the Defendant's stated reason for firing her was pretextual and that the real reason was unlawful retaliation. The Defendant's stated reason for terminating the Plaintiff's employment was her use of vulgar language in the workplace. The evidence presented at trial, however, showed that immediately after complaining of Lucas' ageist remark, the Plaintiff was put under a different supervisor (Eileen Duffin), despite having been under the same supervisor for nearly three years. Then, as soon as the Plaintiff was terminated, her position was removed from Duffin's supervision. In all, the Plaintiff's department only reported to Duffin for two or three months, and only while the Plaintiff was in charge of that department. Given this evidence, it was clearly reasonable for the jury to conclude that the Defendant's proffered reason for discharge was false. See Machinchick v. PS Power, Inc., 398 F.3d 345, 350-51 (5th Cir. 2005) (court held in age discrimination case that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude the employer unlawfully discriminated."). Viewing the foregoing evidence and testimony in a light most deferential to the jury's determination and to the non-movant, the court finds that the jury could have reasonably concluded that the real reason for the Plaintiff's termination was in fact retaliation for reporting Lucas' ageist comment.

Third, the Defendant argues that the Plaintiff failed to show a causal link between her protected activity and her termination. While the temporal proximity (four months) of the Plaintiff's protected activity to her termination, in and of itself, is not sufficient to carry her burden, the Plaintiff also presented the evidence denoted above that does satisfy her burden of showing causation. Not only was the Plaintiff fired a mere four months after complaining of Lucas' comment, but she was

6

nearly immediately placed under a different supervisor, which ultimately led to her firing. In addition, the United States Supreme Court has made clear that a jury can infer discrimination and retaliation from the falsity of the Defendant's proffered reason for termination. See Reeves, 530 U.S. at 146 ("[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993) ("rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . upon such rejection, no additional proof of discrimination is required."). Here, it appears and was reasonable for the jury to find that the Defendant's proffered reason for terminating the Plaintiff was false; based on that finding, it was reasonable for the jury to find that the Defendant terminated the Plaintiff in retaliation for her complaining about the Lucas comment. Thus, the court finds that a sufficient causal link between the Plaintiff's protected activity and her termination has been established.

For all of the above-denoted reasons, the court finds that there was a legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on the issue of ADEA retaliation. The facts and inferences do not point "so strongly and overwhelmingly in favor of [the Defendant] that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co., 411 F.2d at 374. Thus, the Defendant's motion for judgment as a matter of law shall be denied.

2. Willfulness

In an ADEA case, the issue of whether the Defendant's violation was "willful" determines whether the Plaintiff receives liquidated damages - if the violation is deemed willful, the Plaintiff's backpay award is doubled. See West v. Nabors Drilling USA, Inc., 330 F.3d 379, 391 (5th Cir. 2003) ("[L]iquidated damages are a punitive sanction and should be reserved for the most egregious

7

violations of the ADEA."). A violation of the ADEA is deemed willful if the employer knew or showed reckless disregard for whether its conduct was prohibited by the ADEA. West, 330 F.3d at 391. Thus, the issue in this case was whether the Defendant knew or showed reckless disregard for whether firing the Plaintiff would violate the ADEA.

The court finds that the Defendant's violation does not rise to the level required to find willfulness and permit an award of liquidated damages. While the Defendant was certainly aware that the Plaintiff had complained about the ageist remark that Jon Lucas made during the Plaintiff's job interview for a promotion, and that the comment was inappropriate, it is not clear from the testimony presented at trial that the Defendant knew or showed reckless disregard that subsequently firing the Plaintiff would violate the ADEA. In addition, no proof was presented at trial that supports a finding that the Defendant's conduct qualifies as a "most egregious violation of the ADEA." While the court has held that the Defendant did in fact violate the ADEA, its violation does not rise to the level required to permit liquidated damages. Thus, the court finds that the portion of the Defendant's motion seeking entry of judgment as a matter of law on the issue of willfulness shall be granted.

### 3. Motion for New Trial

The Defendant next argues that it is entitled to a new trial because (1) improper evidence was admitted at trial and (2) the Plaintiff's attorney made improper jury arguments in his closing statement. For the following reasons, the court finds that the Defendant's motion should be denied.

#### a. Improper Admission of Evidence

The Defendant first argues that the court admitted evidence that was irrelevant and unfairly prejudicial to the Defendant. The Defendant singles out four items of testimony that it claims were

improperly admitted: (1) whether the witness Lisa Bryant, one of the Plaintiff's co-workers, had ever used vulgar language in the workplace; (2) whether Eileen Duffin had rubbed Kim Thomas' shoulder and called her "pretty"; (3) whether Richard Simms, the Plaintiff's former supervisor, believed that the Plaintiff's termination was unfair; and (4) whether Mary Sue Vincent said that "someone had to go to Human Resources with 'something else'" in order to procure the Plaintiff's termination. The Defendant admits that all of this testimony was admitted for the purpose of impeachment, but now states that the testimony was irrelevant and should have been excluded. The court shall review each piece of testimony separately.

First, the court finds that the issue of whether Lisa Bryant ever used vulgar language in the workplace was relevant because the Defendant's stated reason for terminating the Plaintiff was her use of vulgar language and because Ms. Bryant testified that she was offended by the language. Thus, the question of whether Ms. Bryant herself used such language was proper impeachment testimony as it reflected upon her character for truthfulness or untruthfulness in her prior testimony, and the admission of this testimony was not error.

Second, the court finds that the testimony concerning whether Eileen Duffin, who would become the Plaintiff's supervisor, rubbed Kim Thomas' shoulder and called her "pretty" was relevant because the Plaintiff complained of age discrimination, and Kim Thomas (who was hired for the Director of Sales position - which was the position the Plaintiff applied for and was interviewing for when Jon Lucas made the ageist comment) was younger than the Plaintiff. Thus, the issue of whether Duffin engaged in this conduct was relevant to the issue of age discrimination.

Third, the court finds that the testimony concerning whether Richard Simms, the Plaintiff's former supervisor, believed that the Plaintiff's termination was unfair was properly admitted

9

impeachment testimony. Simms testified that he never made such a statement; the court then permitted, without objection from the Defendant, the witness Mary Myers to testify that she heard Simms make such a statement. The Defendant itself then proceeded to question Ms. Myers extensively concerning that very same statement. This impeachment testimony was properly admitted because it reflected upon Simms' character for truthfulness or untruthfulness in his prior testimony.

Finally, Trina Burkett's testimony concerning whether Mary Sue Vincent, who worked in the Plaintiff's department, stated that someone had to go to Human Resources with "something else" in order to ensure the Plaintiff's termination was not objected to at trial by the Defendant. Indeed, the Defendant itself questioned Ms. Burkett concerning this very statement. The court finds that this statement, particularly because it was not objected to at trial, is not sufficiently prejudicial to warrant granting the Defendant's motion for a new trial.

b. Improper Jury Argument

The Defendant next argues that the Plaintiff's attorney made several comments during his closing statement that justify granting a new trial. The court finds that the Defendant's arguments are without merit.

First, the Defendant argues that the Plaintiff's mere mention that an uncalled witness, Beth Daniel, was in the witness room and available to testify but did not do so warrants a new trial. This argument is without merit as the Plaintiff did not receive any sort of jury instruction concerning the uncalled witness, and there is no evidence that this statement influenced the jury's decision.

Next, the Defendant argues that the Plaintiff's attorney's comments during his closing argument concerning the Defendant's wealth and implying that Eileen Duffin is homosexual

improperly inflamed the jury and warrant a new trial. The court finds that this argument is without merit as the Defendant did not object to the comments at trial, and there is no evidence that the jury's verdict was influenced by these statements as the Defendant actually prevailed on two out of the Plaintiff's three claims.

For all of the foregoing reasons, the court finds that the Defendant's motion for new trial should be denied.

### 4. Backpay and Emotional Distress Damages

The Defendant moves the court to remit the Plaintiff's backpay award. The parties stipulated that the Plaintiff's base salary while employed by the Defendant was $65,000 per year, not including the annual bonuses she received every year and the additional benefits she received; the parties further stipulated that the Plaintiff earned a total income of $18,600 between the time of her firing (July 26, 2002) and the time of trial (February 10, 2005).

Upon review, the court finds that the Plaintiff did not fail to adequately mitigate her damages and that the jury did not err in its backpay calculation: the jury's award of $179,916.67 in backpay is accurate because the total the Plaintiff would have earned in base salary at the Defendant between July 26, 2002, and February 10, 2005, is $165,208 ($5,416.67 per month for 30 and a half months). When this total is added to a reasonable amount per year in bonuses and benefits, and the Plaintiff's actual earnings during that time period are subtracted, the jury's total accurately reflects the amount of backpay due the Plaintiff.

Finally, the Defendant moves for judgment as a matter of law as to the damages the jury awarded the Plaintiff for emotional distress, $300,000. For the following reasons, the court finds that the emotional distress damages award should be remitted to $15,000.

The parties initially argue over whether emotional distress damages are allowable at all in an ADEA retaliation action, with both sides citing competing non-Fifth Circuit authorities in support of their positions. The court notes that the Defendant did not object at trial to P-11, the jury instruction concerning emotional distress damages which was submitted to the jury; thus placing the burden on the Defendant to demonstrate "plain error" in the court's submission of the instruction to the jury. Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202, 208 (5th Cir. 1986). The court finds, however, that even assuming, *arguendo*, that such damages are permissible in an ADEA retaliation action, the jury's award of $300,000 in this case is excessive and should be remitted based on the Plaintiff's demonstration of emotional harm.

It has been repeatedly emphasized that "hurt feelings, anger and frustration are part of life," and are not the types of harm that can support a mental anguish award. Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 940 (5th Cir. 1996). Instead, there must be "a specific discernable injury to the claimant's emotional state" proven with evidence regarding the "nature and extent of the harm." Vadie v. Mississippi State Univ., 218 F.3d 365, 376 (5th Cir. 2000). In this regard, a plaintiff is not absolutely required to offer corroborating testimony or medical evidence in support of her emotional injuries; however, while a plaintiff's own testimony can be sufficient to support an emotional damages award, such a demonstration may be worthy of only nominal damages. Vadie, 218 F.3d at 376-77; Hitt v. Connell, 301 F.3d 240, 250 (5th Cir. 2002) (vacating an emotional damages award). Neither conclusory statements that the plaintiff suffered emotional distress nor the fact that a constitutional violation occurred will necessarily support an award of compensatory damages. Hitt, 301 F.3d at 250.

As to her emotional state after termination, the Plaintiff testified that she had "an incredible

amount of worry and stress." See Trial Transcript at 153. Though the Plaintiff did not seek medical help or receive medical attention, the Plaintiff's fiancé (Robert Brown) testified that the stress of trying to find work "really started getting to her" and that "she would start to cry" in the evenings after having looked for work during the day. See Trial Transcript at 326. Brown also testified that the Plaintiff "talked about suicide a year or so ago." See Trial Transcript at 327.

The foregoing represents the complete record of the Plaintiff's proffer in support of emotional damages. While the court finds that this testimony is sufficient to support an emotional distress award, the testimony is very little more than conclusory assertions for which only nominal damages would be appropriate. Vadie, 218 F.3d at 376-77. Thus, the court finds that the emotional distress damages award of $300,000 is inconsistent with and not reasonably related to the proof presented at trial. Rather, the court finds that the testimony as to the Plaintiff's emotional injury only supports a damage award of $15,000. The court shall order a remittitur reducing the emotional distress award against the Defendant to $15,000; the Plaintiff will have twenty days to accept the remittitur or demand a new trial on the issue of emotional damages.

### 5. Motion for Reinstatement or Front Pay

Finally, the Plaintiff moves the court for reinstatement to her former position or for front pay. The court declines to reinstate the Plaintiff to her former position because there is obvious discord and antagonism between the parties, which is in itself sufficient grounds to deny reinstatement. See Goldstein, 758 F.2d at 1448-49 (holding that reinstatement is inappropriate where "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy."). In addition, it is undisputed that the Plaintiff's former position with the Defendant no longer exists; the Fifth Circuit has held that reinstatement is inappropriate under these circumstances. Woodhouse,

92 F.3d at 257; Ray, 51 F.3d at 1255.  Considering this evidence, as well as the evidence offered at trial, the court is of the opinion that ordering the Defendant to reinstate the Plaintiff would be ineffective as a make-whole remedy.

In addition, although front pay is deemed to be an alternative to reinstatement in certain circumstances, the court finds that an award of front pay would be inappropriate – and excessive – in this case considering the Plaintiff's large award of compensatory damages.  See Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir. 1992) ("[A] substantial . . . damage award may indicate that an additional award of front pay is inappropriate or excessive."); Deloach, 897 F.2d at 822.  Here, in light of the Plaintiff's $179,916.67 backpay award and $15,000 compensatory damages award, the court finds that the Plaintiff's motion for reinstatement or front pay should be denied.

### D. Conclusion

In sum, the court finds that the Defendant's motion for judgment as a matter of law or, in the alternative, for new trial or remittitur, shall be granted in part and denied in part.  The Plaintiff's motion for back pay and reinstatement or, in the alternative, for front pay, shall be denied.

A separate order in accordance with this opinion shall issue this day.

This the 22nd day of April 2005.

/s/ Glen H. Davidson
Chief Judge